UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| KRISTIN WHITSON, | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | * |
| | * |
| STATE OF TENNESSEE d/b/a | * |
| THE UNIVERSITY OF TENNESSEE, | * |
| | * |
| Defendant. | * |

## COMPLAINT

Comes the Plaintiff, by and through her attorneys, and for her claims against the Defendant would show unto the Court as follows:

**I.    JURISDICTION AND VENUE**

1.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

2.    This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343, which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statute, ordinance, regulation, custom, or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States; and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

3. Finally, this Court has supplemental or ancillary jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367 because they are so related that they form part of the same case or controversy.

4. Plaintiff brings this action to redress a hostile educational environment, gender discrimination, and retaliation, pursuant to Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 ("Title IX"), as more fully set forth herein.

5. This is also an action to redress the deprivation of Plaintiff's constitutional rights under the Fourteenth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983.

6. Finally, this is an action to redress violations of all Tennessee state laws prohibiting gender discrimination, harassment, and retaliation, including, but not limited to, the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.*

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), since all defendants reside in this district and the events giving rise to the claims occurred in this district.

## II. THE PARTIES

8. Plaintiff is a female and a resident of Hixson, Hamilton County, Tennessee.

9. Defendant is the University of Tennessee at Chattanooga (UTC), which is a public college and part of the University of Tennessee system. It employs the requisite number of employees to fall within the jurisdiction of all laws referenced herein.

## III. FACTS

10. Plaintiff is employed as an Assistant Professor of Physics at the University of Tennessee at Chattanooga (UTC). She has been employed by UTC since 2007, and has been employed as a tenure-track employee since 2009.

66159
Case 1:16-cv-00009-TRM-CHS   Document 1   Filed 01/19/16   Page 2 of 10   PageID #: 2

11. Plaintiff had to work harder than her male counterparts at UTC to conduct research. For example, she did not have access to research equipment, instrumentation, and storage. As a result, she had to rely upon collaboration with other faculty to conduct research and related projects.

12. One professor with whom Plaintiff had to collaborate to conduct research was Dr. Jose Barbosa, Associate Professor of Biology, Geology, and Environmental Science. Another was Dr. Manuel Santiago, Professor of Chemistry and Assistant Dean in the College of Arts and Sciences.

13. Shortly after beginning her collaboration with Dr. Barbosa, he began to sexually harass Plaintiff. For example, Dr. Barbosa attempted to grope her breasts and forcibly hug and kiss her. He also made comments of a sexual nature, and his wife (also a UTC employee sent Plaintiff threatening and harassing text messages). Plaintiff made clear that the harassment was unwelcome.

14. During the course of the harassment and Plaintiff's objection to it, Dr. Barbosa took Plaintiff's research samples and Dr. Santiago withheld data and results from her experiments in retaliation. As a result, Plaintiff's samples and research were lost and her opportunities for successful research projects were diminished. Plaintiff's original ideas and projects were then taken over by Dr. Barbosa and his close associate, Dr. Santiago.

15. As a result, Plaintiff complained to Dean Jeff Ellwell in December of 2013. Dean Elwell advised her to file two separate internal complaints—one with the Office of Equity and Diversity alleging sexual harassment, and one to the Office of Research Integrity alleging theft of biological samples and withholding of data.

16. Plaintiff promptly followed Dean Ellwell's instructions and filed the two complaints in January of 2014.

Page 3 of 10

66159
Case 1:16-cv-00009-TRM-CHS   Document 1   Filed 01/19/16   Page 3 of 10   PageID #: 3

17. Shortly after, Plaintiff was notified by letter from the Office of Equity and Diversity that it could not conclude she had been harassed and also that it did not investigate matters concerning research projects. The office of research integrity also informed Plaintiff that they did not investigate sexual harassment, and allowed Dr. Barbosa to receive monetary contracts to work on the same research that was then plagiarized from Plaintiff's work.

18. On the same day that Plaintiff was notified that the Office of Equity and Diversity could not conclude that she had been subjected to sexual harassment, Plaintiff was notified by Dean Ellwell that her research was lacking and that if it did not increase in the following year she could be denied tenure as a result. In Dean Ellwell's letter, he outlined his expectations for Plaintiff in the coming year in order for her to obtain tenure and promotion. Provost Ainsworth stated the same thing as Dean Elwell.

19. Plaintiff complied with Dean Ellwell's and Provost Ainsworth's letter, although she found it to be retaliatory, and completed all of the expectations.

20. In the Spring of 2015, Plaintiff became eligible for tenure and promotion and applied for both, consistent with Faculty Policy.

21. Plaintiff submitted her dossier and required materials to the Rank and Tenure Committee in a timely manner.

22. The Rank and Tenure Committee, with the exception of one member who abstained vote, unanimously recommended that Plaintiff be granted tenure, as did the Department head of Physics, Geology, and Astronomy.

23. Despite the Committee's and department head's overwhelming recommendations, Dean Ellwell then denied Plaintiff's grant of tenure. She was notified of the same on April 2, 2015. Dean Elwell rested his denial upon the statement that "it appears that your record of peer-

Page 4 of 10

66159
Case 1:16-cv-00009-TRM-CHS   Document 1   Filed 01/19/16   Page 4 of 10   PageID #: 4

review publication and funded research falls short of what has been achieved by previous candidates for tenure in the department." Although that statement was incorrect, any deficiency at one time in her research was directly due to Dr. Barbosa's harassment of Plaintiff and the retaliation to which she was subjected when she objected to it. Provost Ainsworth's letter of tenure and promotion denial was very similar to Dean Elwell's.

24. Plaintiff appealed Dean Elwell's determination in a timely manner through all administrative channels as required and the denial of tenure was affirmed up through the provost.

25. Plaintiff then appealed the denial to the Faculty-Administration Relations Committee (FARC) as suggested by UTC policy.

26. FARC conducted an investigation into her denial of tenure and, on August 28, 2015, unanimously recommended that the Dean's and Provost's decisions be reversed and that the chancellor reconsider granting tenure based upon Plaintiff's dossier and the overwhelming evidence that she had met and exceeded all requirements for tenure.

27. Despite the recommendation of FARC, Plaintiff's tenure and promotion have still been denied.

## IV. LEGAL ALLEGATIONS AND CLAIMS

28. Title IX states that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance.

29. At all material times, UTC was receiving federal funding, as contemplated by Title IX.

30. UTC implemented and executed policies and customs in regard to the events that resulted in the deprivation of Plaintiff's constitutional, statutory, and common-law rights.

31. Upon information and belief, UTC has engaged in a pattern and practice that discriminates against female professors and employees on the basis of their gender.

32. The sex-based harassment articulated herein was so severe, pervasive, and objectively offensive that it deprived Plaintiff of access to educational opportunities or benefits provided by the school.

33. UTC created and/or subjected Plaintiff to a hostile educational environment on the basis of her sex in violation of Title IX because

   a. Plaintiff was a member of a protected class;

   b. She was subjected to sexual harassment;

   c. The harassment was on the basis of her sex; and

   d. She was subjected to a hostile environment created by UTC's lack and policies and procedures and failure to properly investigate or address the harassment and its subsequent retaliation of her.

34. UTC and its officials had actual knowledge of the harassment and failed to investigate and discipline Plaintiff's harasser in a timely manner and consistent with its own policy and federal and state law.

35. UTC's failure to promptly and appropriately respond to the alleged harassment resulted in Plaintiff, on the basis of her sex, being excluded from participation in, being denied the benefits of, and being subjected to discrimination in UTC's education program in violation of Title IX.

36. UTC failed to take immediate, effective, remedial steps to resolve the complaints of harassment and instead acted, at best, with deliberate indifference toward Plaintiff.

66159
Case 1:16-cv-00009-TRM-CHS   Document 1   Filed 01/19/16   Page 6 of 10   PageID #: 6

37. Furthermore, UTC provides assistance and benefits in terms of research and opportunities to male professors that are not offered to female professors.

38. Furthermore, UTC employs disparate standards in assessing tenure and promotion for female and male professors.

39. Plaintiff was denied promotion and tenure on the basis of her gender.

40. Likewise, Plaintiff's gender was a motivating factor in the decisions of UTC at issue, as outlined herein.

41. UTC also retaliated against Plaintiff for her protected activities under Title IX. The retaliation further resulted in her being denied the benefits of, being excluded from participation in, and being subjected to discrimination in UTC's education program in violation of Title IX.

42. The reasons proffered by UTC for Plaintiff's denial of promotion and tenure are pretextual.

43. All of the acts complained of also violate the provisions of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-301, et seq.

44. UTC's actions have also violated § 1983.

45. To wit, state institutions are liable when they "have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.

46. A § 1983 plaintiff can draw from one of four sources to establish a municipality's or government body's liability for an illegal custom or policy: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations.

47. A single employment action can be an official municipal policy so long as the decision-maker acts with governmental authority.

48. In this case, UTC, through individuals with final decision-making authority, have made an official decision and policy that deprived Plaintiff of her constitutional rights. Specifically, Plaintiff hereby complains that she was deprived of her property interests, without due process and was deprived of equal protection of the law.

49. Further, UTC has a custom or tolerance or acquiescence of federal rights violations against females.

50. Consequently, UTC is liable to its constitutional tort violations under § 1983, which enforces the Fourteenth Amendment of the United States Constitution.

51. The actions of UTC and its officials were done with actual malice toward the Plaintiff and with willful and wanton indifference to and with deliberate disregard for the constitutional rights and statutory civil rights of Plaintiff. Thus Plaintiff is entitled to punitive damages, actual damages, and attorney fees pursuant to 42 U.S.C. § 1988.

52. UTC is responsible for the acts and omission of its employees, managers, and officers. As a result of all of these actions, Plaintiff has been damaged. This includes, but is not limited to, that Plaintiff has suffered emotional distress and psychological damage, long-term career damage, monetary loss, and damage to her reputation and standing in her community.

53. Plaintiff has filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

a. That the Court issue and serve process on Defendant and require Defendant to answer within the time prescribed by law;

b. That upon the hearing of this cause Plaintiff be awarded judgment for damages for lost wages and the value of all employment benefits, which she has lost from the date of Defendant's unlawful actions;

c. That the Court issue an injunction requiring Defendant to grant Plaintiff promotion and tenure with all employment rights and benefits to which she would have been entitled but for the actions complained of herein, and without harassment or illegal conditions imposed on her job, or, in the alternative, front pay and benefits in lieu of reinstatement,

d. That Plaintiff be awarded additional compensatory damages, including damages for humiliation and embarrassment, and emotional distress, as are allowed pursuant to the statutes and laws cited herein,

e. That Plaintiff be awarded attorney fees and such other and further relief as the Court deems proper;

f. That Plaintiff be awarded all compensatory and punitive damages as the Court deems proper; and

g. Plaintiff demands a jury to try all claims and issues triable by a jury.

Respectfully,

BURNETTE, DOBSON & PINCHAK


By: __s/ *Donna J. Mikel*_____
      Donna J. Mikel, BPR#020777
      Attorneys for Plaintiff
      711 Cherry Street
      Chattanooga, TN 37402
      Phone: (423) 266-2121
      Fax: (423) 266-3324
      Email: dmikel@bdplawfirm.com